UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
**DONOVAN FAYEZ-OLABI**, :
:
              Plaintiff, :
: **MEMORANDUM DECISION AND**
        – against – : **ORDER**
:
: 21-CV-5443 (AMD) (LGD)
**CREDIT ACCEPTANCE CORPORATION**, :
:
              Defendant. :
:
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       On September 21, 2021, *pro se* plaintiff, Donovan Fayez-Olabi, brought this action in the United States District Court for the Southern District of New York asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.* (the "FCRA") arising out his financing of a used car in 2014. (ECF No. 2.) On September 23, 2021, Chief Judge Laura Taylor Swain for the Southern District of New York transferred the action to this Court pursuant to 28 U.S.C. § 1404(a). (ECF No. 3.)

       On February 10, 2022, the defendant moved to compel arbitration. (ECF No. 9.) I originally ordered the plaintiff to file his response on March 14, 2022, which the plaintiff did not do. In light of plaintiff's *pro se* status, I extended the deadline to respond to April 13, 2022. After the plaintiff failed to file his response on that date, I granted the plaintiff one final extension to May 19, 2022, but warned that if he did not submit his response by that date, I would consider the defendant's motion fully briefed. To date, the plaintiff has not filed a response to the defendant's motion or sought an extension of time. For the reasons that follow,

the defendant's motion to compel arbitration of the plaintiff's FDCPA and FCRA claims is granted. The action is stayed pending arbitration.

## BACKGROUND

On June 25, 2014, the plaintiff purchased a silver 2003 Nissan Maxima with 110,640 miles from Long Island Auto Find Inc. for $13,621.34, and executed a Retail Installment Contract. (ECF No. 9-2 at 1-2.) The defendant is not a signatory to the contract, but the contract defines the terms "We" and "Us" to include both the dealership and the dealership's "assignee." (ECF No. 2 at Ex. A.) The term "assignee" is later defined as the defendant. (*Id.* at Ex. C.) The contract also provides that its terms are to be "governed by the law of the state of the [dealership's] address shown on Page 1 of this contract." (*Id.*) The first page of the contract lists a New York address for the dealership. (*Id.* at Ex. A.)

The plaintiff does not dispute the authenticity of the contract, and appended portions of the contract to his complaint. (*See* ECF No. 2 at Exs. A-C.) The contract bears the plaintiff's signature in two places. (*Id.* at Ex. B.) Also appended to the complaint is an undated letter addressed to the defendant in which the plaintiff states, "YOUR CONTRACT MISLEADING ME INTO SIGNING IS YOUR WAY TO VALIDATE THE ACCOUNT IS A VIOLATION." (*Id.* at 32.) In addition to attaching the contract and the undated letter to his complaint, the plaintiff also included an "Affidavit of Response for Cease and Desist," what appears to be an excerpt of a credit report, a balance statement of his credit account with the defendant and five letters addressed to the plaintiff from the defendant dated December 8, 2020, February 23, 2021, April 13, 2021, August 13, 2021 and September 10, 2021 respectively. (*See* ECF No 2.)

The plaintiff made a down payment of $3,000 and financed the outstanding $10,621.34 balance at an annual interest rate of 23.99%, which required the plaintiff to make $5,996.74 in interest payments over the 48-month term of the contract. The total value of the transaction

2

including taxes, fees and interest amounted to $19,618.08. (*Id.* at Ex. A.) The dealership assigned all of its rights under the contract to the defendant, obligating the plaintiff to "make all future payments" to the defendant. (*Id.* at Exs. B-C.)

The contract also includes an arbitration clause, a copy of which is included in the defendant's motion, but not in the complaint. (*See* ECF No. 9-1 at 8.) However, the first page of the contract, which the plaintiff submitted with his complaint, contains two references to the arbitration clause; the first such reference appears in an outlined box and provides:

> **ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the Arbitration Clause. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause.

(ECF No. 2 at Ex. A.) The plaintiff's handwritten initials "DFO" appear directly below and in the same outlined box as this first reference to the arbitration clause. The second reference to the arbitration clause appears at the bottom of the first page, and states:

> **ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE, SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

(*Id.*) The plaintiff's initials appear directly below this second reference to the arbitration clause.

Between July 25, 2014 and September 24, 2020, the plaintiff made a series of payments to the defendant totaling approximately $5,000. (ECF No. 2 at Ex. G.) These payments did not occur at regular intervals. The defendant charged the plaintiff late fees on 17 separate occasions and appears to have repossessed his vehicle twice, charging the plaintiff $250 each time. (*Id.*)

3

By September of 2020, the defendant had waived the remainder of the plaintiff's outstanding loan balance. (*Id.*)

At some point, the plaintiff wrote the defendant a letter in which he accused the defendant of damaging his credit score by reporting his delinquent payments to the credit reporting agencies. In the letter, the plaintiff claimed that his car was "paid in full," and that there was "no legal proof that I have an obligation to pay this alleged debt." (*Id.* at 28, 33.) The plaintiff also accused the defendant of violating various provisions of the FDCPA, including 15 U.S.C. § 1692e(10), which prohibits debt collectors from using false representation or deception to collect debts. (*Id.*)

In response, the defendant wrote the plaintiff a series of letters between December 8, 2020 and September 10, 2021. In these letters, the defendant explained that it closed the plaintiff's account on September 25, 2020, and reported the account as paid with a payment rating of "180 days or more past the due date." (*Id.* at 21). The defendant also informed the plaintiff that his history of delinquent payments could remain on his credit report for seven years after the date his account first became delinquent. (*Id.*) In an August 13, 2021 letter, the defendant disputed the plaintiff's allegations that the defendant was abusive and misleading in its efforts to collect the debt or that the defendant had acted inappropriately or violated any laws. (*Id.* at 23.) The defendant also claimed that the 23.99% interest rate it charged the plaintiff was "lawful,"[1] and that the plaintiff agreed to the terms of the contract voluntarily. (*Id.*)

In his complaint, the plaintiff alleges that the defendant used "violent language to tarnish [his] credit reputation" and "obscene, profane and abusive language to oppress [him] into paying an alleged debt in violation of 15 U.S.C. § 1692d(2)." The plaintiff further alleges that the

---

[1] The threshold annual interest rate for criminal usury in New York State is 25%. N.Y. Penal Law § 190.40 (McKinney).

4

defendant used "deceptive means to collect a[n] alleged debt," and concealed its true identify as a debt collector in violation of 15 U.S.C. § 1692e.  Finally, the plaintiff alleges that the defendant violated 15 U.S.C. § 1692(j) by using forms that led the plaintiff to believe that a party other than the defendant was involved in collecting the plaintiff's debt.  (*Id.*)

## LEGAL STANDARD

Allegations in a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Weixel v. Bd. of Educ. Of City of New York*, 289 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

A court deciding a motion to compel arbitration applies a standard "similar to that applicable for a motion for summary judgment."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).  The Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) (second alteration in original), and draws all reasonable inferences in favor of the non-moving party.  *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016).  I consider all of the documents the plaintiff submitted with his complaint, including his "Affidavit of Response for Cease and Desist," credit report, loan account statements and the correspondence between the plaintiff and the defendant.  Because the plaintiff referred to the contract in the complaint and appended a portion of it to the complaint, I also consider the contract.

5

**DISCUSSION**

The Federal Arbitration Act provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts").

A court evaluating the enforceability of an arbitration agreement under the FAA should consider (1) whether the parties agreed to arbitrate, (2) the scope of the arbitration agreement, and (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citation omitted). If some, but not all, of the claims in the case are arbitrable, the court must consider whether to stay the balance of the proceedings pending arbitration. *Id.*

**I.      The parties agreed to arbitrate.**

"Ordinary principles of contract . . . determine which parties are bound by an agreement to arbitrate." *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-CV-7646, 2019 WL 1353279, at *6 (S.D.N.Y. Mar. 15, 2018) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 235 (2d Cir. 1960)). Under New York law, which governs the contract, "the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Tellium, Inc. v. Corning Inc.*, No. 03-CV-8487, 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004). The defendant has met its burden here.

In support of its motion to compel arbitration, the defendant submitted a copy of the contract, a portion of which the plaintiff also appended to his complaint. (ECF No. 9-1.) As

noted above, the plaintiff does not deny that he was a party to the contract, nor could he do so persuasively. The contract bears the plaintiff's signature in two places—objective manifestations of the plaintiff's assent to the contract's terms (*id.* at Ex. B.), and these signatures match the plaintiff's signature on documents he appends to the complaint. (*Id.* at 7, 11-12). Under these circumstances, the plaintiff is presumed to know the terms of the contract and to have consented to those terms. *Horvath v. Banco Comercial Portugues, S.A.*, No. 10-CV-4697, 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) ("[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound.").

II. **The plaintiff's FDCPA and FCRA claims are within the scope of the arbitration clause.**

Having determined that the parties agreed to arbitrate, I next consider whether the plaintiff's FDCPA and FCRA claims fall within the scope of the arbitration clause. Just as courts look to general state law contract principles to determine whether parties have agreed to arbitrate, they look to general state law contract principles to interpret the scope of an arbitration provision. *Nicosia*, 834 F.3d at 229; *Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 296 (2d Cir. 1999). New York law governs the contract and requires courts to "give effect to the parties' intent as expressed by the plain language of the provision." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003) (quoting *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001)).

The arbitration clause provides that either the plaintiff or the defendant "may require any Dispute to be arbitrated." (ECF No. 9-1 at 8.) The term "dispute" is defined as "any controversy between [the plaintiff and the defendant] arising out of or in any way related to this contract, including…the collection of amounts due under this contract." (*Id.*) The arbitration clause further provides that "'[d]ispute' shall have the broadest meaning possible, and include contract

7

claims, and claims based on tort, violations of laws, statutes, ordinance regulations or any other legal or equitable theories." (*Id.*)

A presumption of arbitration arises, even over collateral matters, when an arbitration clause is broad. *JLM Indus., Inc.*, 387 F.3d at 172 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks and citations omitted). "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.,* 448 F. Supp. 2d 458, 461 (E.D.N.Y. 2006) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). In this case, the expansive language of the arbitration clause unambiguously encompasses the plaintiff's FDCPA and FCRA claims, all of which arise out of the defendant's efforts to collect the debt memorialized by the contract.

**III.     The plaintiff's FDCPA and FCRA claims are not subject to legislative preemption.**

Congress has not exempted FDCPA and FCRA claims from arbitration. *See DeGraziano v. Verizon Comms., Inc.,* 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) ("FCRA claims asserted against Verizon Wireless arising out of a customer service agreement are "presumptively arbitrable"); *see also Biggs v. Midland Credit Mgmt.*, No. 17-CV-340, 2018 WL 1225539, at 5 n.4 (E.D.N.Y. Mar. 9, 2018) (FDCPA acts are arbitrable) (citation omitted). Accordingly, the FAA applies to the parties' dispute, and the plaintiff is obligated to arbitrate his FDCPA and FCRA claims pursuant to the arbitration clause.

## IV. Plaintiff's Fraud Allegations

Arbitration clauses can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The plaintiff alleges that the defendant misled him into signing the contract. (ECF No. 2 at 32.) Construed liberally, the plaintiff challenges the enforceability of the contract on the grounds of fraud. For the reasons discussed below, however, the plaintiff's challenge does not relieve him of his obligation to arbitrate his FDCPA and FCRA claims.

### a. Fraudulent Inducement

The plaintiff raises two potential fraud challenges to the contract's enforceability: fraud-in-the-inducement and fraud-in-the-factum. "A fraud-in-the-inducement challenge…attacks the validity rather than the existence, of [a] contract as a whole[.]" *Delgado v. Ocwen Loan Servicing, LLC*, 13-CV-4427, 2016 WL 4617159 at *11 (E.D.N.Y. Sept. 2, 2016); *see also Ipcon Collections LLC v. Costco Wholesale Corp.* 698 F.3d 58, 62 (plaintiff alleging defendant deceived plaintiff regarding the defendant's intention to honor their contract alleged fraud-in-the-inducement).

To the extent the plaintiff challenges the contract on the basis of fraudulent inducement, his challenge falls squarely within the arbitration clause's express terms, which provide that "any dispute or argument that concerns the validity or enforceability of the contract as a whole is for the arbitrator, not a court, to decide." (ECF No. 9-1 at 8.) "It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration." *Stolt-Nielsen*, 387 F.3d at 170 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967)). In this instance, arbitration is warranted because the plaintiff does not challenge his agreement to the arbitration clause. *Campaniello*

9

*Imps., Ltd v. Saporiti Italia S.p.A.,* 117 F.3d 655, 667 (2d Cir. 1997) ("Since there is no fraud or misrepresentation that relates directly to the arbitration clause," district court properly sent case to arbitration).

### b. Fraudulent Execution

Unlike a fraud-in-the-inducement challenge, which "merely challenges a party's obligation under a contract that is acknowledged to exist" a fraud-in-the-factum challenge (also known as fraud-in-the-execution) challenges the fact of a contract's existence. *Delgado*, 2016 WL 4617159 at *10.

"[T]he Second Circuit has long recognized a limited exception to the requirement of arbitration for general contract challenges where a party attacks the very existence of a contract in the first place." *Id.* at *9; *Ipcon* 698 F.3d at 61 ("[A] limited exception to the requirement of arbitration for general contract challenges may be available where a party questions whether a contract was ever made.") (internal quotation marks and citations omitted)).

Fraud-in-the-factum arises "in those rare cases where the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir.1994); *Langley v. Fed. Deposit. Ins. Corp.*, 484, U.S. 86, 94 (1987) (describing fraud-in-the-factum as "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents.") When a plaintiff alleges facts supporting a claim for fraud-in-the-factum, the Court must address those claims rather than sending them to arbitration. *McCaddin v. Southeastern Marine Inc.*, 567 F. Supp. 2d 373, 378 (E.D.N.Y. 2008) ("any triable issues of fact regarding fraud in the execution must be addressed by the court and not the arbitrator").

10

The plaintiff does not allege any such facts. He claims only that the defendant misled him into signing the contract, but includes no specific factual allegations; he does not allege that either the defendant or the dealership procured his signature by telling him the contract was not binding, or that they changed the contents of the contract after he signed it. *See Ipcon* 698 F.3d at 62 n.5 (plaintiff who neither alleged that the defendant had forged a contract or that the defendant had mispresented the contract's enforceability could not support a claim of fraud-in-the-factum).

Because the plaintiff's fraud allegation is insufficient to create a genuine issue of material fact as to the existence of the contract, the plaintiff's FDCPA and FRCA claims are subject to arbitration. *McCaddin* 567 F. Supp. 2d at 378 (compelling arbitration of dispute where plaintiff failed to allege or provide any evidence creating a material issue of fact regarding fraud in the execution); *see also Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."); *Contemporary Mission v. United States Postal Serv.,* 648 F.2d 97, 107 n.14 (2d Cir. 1981) ("[An] opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.") (internal citations and quotation marks omitted)).

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is granted. The action is stayed pursuant to Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3; *see also Katz v. Cellco Partnership*, 794 F.3d 341, 343 (2d Cir. 2015) (The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested.")

**SO ORDERED.**

                                                       s/Ann M. Donnelly
                                                      ANN M. DONNELLY
                                                      United States District Judge

Dated: Brooklyn, New York
       July 25, 2022